# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| DOUGLAS FAULKNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:17-cv-01197-STA-egb |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Douglas Faulkner filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on May 2, 2016. On July 21, 2016, the ALJ denied the claim. The Appeals Council subsequently denied the request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[1]

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

---

[1] Plaintiff received an extension of time in which to file a reply brief (ECF No. 17), but no reply was filed.

cause for a rehearing." 42 U.S.C. § 405(g). The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision and whether the correct legal standards were applied. *See Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations[2] and resolve material conflicts in the testimony and to decide the case accordingly. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990). When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff was born on April 15, 1971. He went to a vocational school to study to become a machinist. He has past work as a machinist and lab worker. He claims disability beginning February 4, 2014, due to an enlarged heart, cardiomyopathy, status post defibrillator implantation, and high blood pressure.

---

[2] The SSA published Social Security Ruling 16-3p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims, which supersedes SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements. SSR 16-3p eliminates use of the term "credibility" from SSA policy and clarifies that subjective symptom evaluation is not an examination of a claimant's character. SSR 16-3p, 2016 WL 1119029 *1 (March 16, 2016). SSR 16-3p took effect March 16, 2016, which is before the ALJ issued his decision and, therefore, is applicable to the decision in this case.

The ALJ made the following findings: (1) Plaintiff engaged in substantial gainful activity until July 10, 2014, but not thereafter, and met the insured status requirements of the Act through December 31, 2019; (2) Plaintiff has the severe impairment of nonischemic cardiomyopathy; but he does not have an impairment or combination of impairment that meet or medically equal one of the listed impairments; (3) Plaintiff retains the residual functional capacity to perform sedentary work; he can lift ten pounds occasionally and frequently, sit for six hours in an eight-hour workday, and stand/walk for two hours in an eight-hour workday; he must avoid all exposure to unprotected heights and moving machinery; (4) Plaintiff is not able to perform his past relevant work; (5) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (6) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (7) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision. R. 13 – 17.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a). Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, other jobs exist in significant numbers in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's decision. He specifically argues that the ALJ erred at step two and step three of the sequential analysis. He also argues that the ALJ improperly weighed the medical evidence, including the opinion of his treating specialist, and did not give good reasons for rejecting the opinion of that specialist. The Court finds Plaintiff's arguments unpersuasive.

At step two, the ALJ found that Plaintiff has the severe impairment of nonischemic cardiomyopathy. Therefore, although the ALJ did not find Plaintiff's alleged enlarged heart and chronic heart failure to be severe impairments, she made a step two analysis and considered Plaintiff's severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of Plaintiff's impairments were not deemed to be severe at step two is legally

4

irrelevant. *See Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment is severe is harmless error when other impairments are deemed severe)). The ALJ, therefore, did not err in this regard.

Next, Plaintiff complains of the ALJ's step three finding that his severe impairment of nonischemic cardiomyopathy did not meet or equal any listed impairment, including Listing 4.02. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.02. The ALJ reviewed the record as a whole and found that Plaintiff did not meet or equal a listing-level impairment. Substantial evidence supports that finding.

Listing 4.02 requires a claimant to show chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs. The requisite level of severity for this impairment is met when the requirements in both A and B are satisfied. *Id.* Plaintiff must show medically documented presence of one of the following: (1) systolic function with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of thirty per cent or less during a period of stability (not during an episode of acute heart failure); or (2) diastolic failure with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure). *Id.* § 4.02A.

Plaintiff must also show one of the following: (1) persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom a doctor has concluded that the performance of an exercise test would present a significant risk to the individual; or (2) three or more separate

episodes of acute congestive heart failure within a consecutive twelve-month period with evidence of fluid retention from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for twelve hours or more, separated by periods of stabilizations; or (3) an inability to perform on an exercise tolerance test at a workload equivalent to five METs or less. *Id.* § 4.02B.

In the present case, Plaintiff has not shown that he meets the B requirements. No doctor suggested that he was incapable of performing an exercise test or that he had an inability to perform an exercise tolerance test at a workload equivalent to five METs or less. Plaintiff has also not had three hospitalizations for heart failure with separated periods of stabilization.

Plaintiff claims that he has had repeated episodes of chronic heart failure, but he was only hospitalized once for heart failure and once for the defibrillator implantation. R. 295-467, 476, 487. Plaintiff further relies on "other significant symptomatology as described in the listing." However, he has not identified the symptomatology or tied it to the requirements of Listing 4.02B. Consequently, Plaintiff has not shown that he met all criteria of Listing 4.02.

Also supporting the ALJ's decision are the opinions of state agency medical consultants who reviewed the medical records and concluded that Plaintiff did not meet or equal a listing-level impairment. *See Gustafson v. Comm'r of Soc. Sec.*, 550 F. App'x 288, 289 (6th Cir. 2014) ("In addition, the ALJ's finding was supported by the opinions of two reviewing psychologists, who concluded that Gustafson did not meet the regulatory listing for mental retardation."). The opinions of the state agency medical consultants, R. 59-62, 72, 74-76, support the ALJ's finding that Plaintiff did meet Listing 4.02.

Next, Plaintiff complains of the weighing of the medical evidence and opinions, especially the opinion of his treating cardiologist. Medical opinions are to be weighed by the

process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." Soc. Sec. Rul. 96–2P.

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96–2P; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).[3]

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination, 20 C.F.R. § 404.1502,

---

[3] The SSA has rescinded SSR 96-2p in connection with its new rules governing the analysis of treating physicians' opinions, but that rescission is effective only for claims filed on or after March 17, 2017. *See* SSR 96-2p, Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 2017 WL 3928298 at *1 (March 27, 2017). Thus, the rescission is not applicable to this case.

404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship. *Id.* § 404.1502, 404.1527(c)(2). In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. Rul. No. 96–6p. Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. § 404.1527(c). State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions. *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p.

In the present case, substantial evidence supports the weight that the ALJ gave to the medical evidence and opinions in the record and his evaluation of Plaintiff's residual functional capacity, both physical and mental, and she gave good reasons for the weight she gave the medical opinions. The ALJ properly determined that Plaintiff could perform a limited range of sedentary work with environmental restrictions.

In April 2016, treating cardiologist Chibuzo Nwokolo, M.D., opined on a checkmark form that Plaintiff could lift less than ten pounds occasionally and frequently, sit for less than six hours, and stand/walk for less than two hours. R. 890-93. Plaintiff could occasionally kneel, crouch, crawl, and stoop, and never climb or balance. R. 891. The ALJ acknowledged that Dr. Nwokolo was Plaintiff's treating physician but found his opinion to be inconsistent with the record. For example, the medical records show that Plaintiff was functioning at the New York

8

Association ("NYHA") rating of I to II. R. 561-66, 583-87, 767, 866. Class I is indicative of no limitation of physical activity and ordinary physical activity does not cause undue fatigue, palpitation, or dyspnea. Class II is indicative of a slight limitation of physical activity. The patient is comfortable at rest, but ordinary physical activity results in fatigue, palpitation, or dyspnea. *See* American Heart Associations, Classes of Heart Failure, http://www.heart.org/HEARTORG.[4] Plaintiff's Class I to II classification is inconsistent with Dr. Nwokolo's opinion and, instead, supports the ALJ's finding that Plaintiff could perform sedentary work. Thus, the ALJ could properly give Dr. Nwokolo's opinion less weight.

Moreover, the checkmark form prepared by Dr. Nwokolo is conclusory and contains little explanation. R. 890-93. "While checklist opinions are not per se unreliable in this context, it is not improper for an ALJ to take into consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016); *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (finding that controlling weight was properly not given to unsupported checklist opinion). Accordingly, the ALJ properly evaluated Dr. Nwokolo's opinion and gave it little weight.

State agency medical consultants reviewed the medical records and opined that Plaintiff could perform sedentary and light work with environmental limitations. Michael Ryan, M.D., opined that Plaintiff could perform sedentary work but must avoid all exposure to hazards. R. 59-62. Stephen Burge, M.D., also reviewed the record and found that Plaintiff could perform

---

[4] Physicians "typically use a classification system that places an individual in one of four categories based on how much the individual is limited during physical activity due to cardiac disease." *Shelley v. Berryhill*, 2017 WL 4366721 at *3 n. 7 (E.D. Tenn. Sept. 29, 2017) (citing Classes of Heart Failure, Am. Heart Ass'n, https://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure.

9

light work without concentrated exposure to hazards. R.72, 74-76. The ALJ weighed the conflicting opinions of Dr. Nwokolo and the consulting physicians and gave the consulting physicians' opinions greater weight because they were more consistent with the record as a whole. In making her decision, the ALJ could properly rely on the opinions from the consulting doctors together with the other evidence of record. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) (noting that an ALJ may give substantial weight to the opinions of state agency physicians when these opinions are supported by the record as a whole); *see also Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins.").

Plaintiff's treatment record supports the ALJ's decision. Plaintiff was hospitalized with heart failure in February 2014 and underwent a defibrillator implantation in July 2014. R. 295-467, 476, 487. After the implantation, as noted above, Plaintiff received a NYHA classification of I and II, indicating no more than slight physical limitations. R.561-66, 583-87, 767. Plaintiff was not a candidate for a heart transplant or more advanced heart failure therapies because he was doing "too well." R. 561, 563-64, 566, 588. The ALJ could properly find Plaintiff's conservative treatment to be inconsistent with his allegations of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011) (stating that modest treatment is "inconsistent with a finding of total disability").

Accordingly, substantial evidence supports the ALJ's weighing of the medical evidence. The Court finds that the ALJ properly evaluated Plaintiff's allegations of disability, determined that those allegations were not supported by the record, and stated her reasons for her decision. In so doing, the ALJ considered such factors as the medical opinions, Plaintiff's medical

treatment, and his daily activities. Substantial evidence supports the ALJ's finding that Plaintiff could perform a range of sedentary work with environmental limitations.

Substantial evidence also supports the step five finding that Plaintiff retained the ability to perform work existing in significant numbers in the national economy. A vocational expert testified that an individual of Plaintiff's age, education, work experience, and residual functional capacity could perform the jobs of weight tester, a dowel inspector, and a button assembler. R. 47–48. As the hypothetical question to the vocational expert included those impairments the ALJ found credible and excluded those she discredited for legally sufficient reasons, the vocational expert's testimony constitutes substantial evidence in support of the ALJ's determination. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible.").

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   March 29, 2019